UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
ANTHONY BENSON, on behalf of himself and
all others similarly situated,

                        Plaintiff,

            v.

MERCK & CO., INC.,

                        Defendant.
-----------------------------------------------------------------

Docket No.

**CLASS ACTION
COMPLAINT &
DEMAND FOR
JURY TRIAL**

Plaintiff,  ANTHONY BENSON, ("Plaintiff' or "Mr. Benson"), on behalf of himself and

all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel,

JOSEPH & NORINSBERG, LLC, as and for their putative class action complaint upon Defendant

MERCK & CO. ( "MERCK & CO." or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1.      Plaintiff Anthony Benson is a resident of Bronx, New York, and is permanently

disabled due to bilateral blindness. As confirmed by Dr. Jeffrey G. Odel, MD, of Columbia

University Irving Medical Center, Mr. Benson underwent bilateral enucleation following

traumatic ocular injuries and has no remaining visual function. He meets the statutory definition

of legal blindness under both New York State and federal law. (See Exhibit A)

2.      Mr. Benson is a proficient user of NonVisual Desktop Access (NVDA) screen

reader software, which he relies on daily to navigate digital environments independently. His

fluency with keyboard commands and screen-reading protocols enables him to engage with

complex content—including pharmaceutical assistance portals, patient education pages, and

1

insurance navigation tools—without assistance. NVDA's compatibility with his preferred assistive technologies is indispensable to its autonomy and digital accessibility.

3.      Plaintiff brings this civil action against Defendant Merck & Co., Inc., for its failure to design, construct, maintain, and operate its highly interactive websites—including www.merck.com and affiliated platforms such as MerckHelps and the Merck Access Program—in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its websites—and therefore to the essential services and offerings therein—constitutes a violation of Plaintiff's rights under the Americans with Disabilities Act (ADA).

4.      On September 5 and September 6, 2025, and again on October 3, 2025, Plaintiff attempted to access www.merck.com and its affiliated platforms using NVDA screen reader software. His intent was to review patient assistance options, evaluate eligibility for Merck's pharmaceutical support programs—including for BELSOMRA® (suvorexant), a medication prescribed as part of his ongoing care—and access educational materials related to his condition. These resources were selected based on his need for accessible, science-backed information and financial support for essential medications.

5.      Despite multiple attempts, Plaintiff was unable to independently complete his objectives due to persistent access barriers. These included missing alternative text, empty headings, broken skip links, empty buttons, and redundant link structures that rendered key information unreadable by screen reader software. The homepage, leadership portal, and patient assistance sections contained over 30 violations of the Web Content Accessibility Guidelines ("WCAG") 2.1 Level A and AA standards, including unlabeled interactive elements, inaccessible

2

navigation menus, and ARIA inconsistencies that interfered with NVDA's parsing of eligibility criteria and program details.

6.     Defendant MERCK & CO., INC. is a New Jersey corporation with its principal place of business at 126 East Lincoln Avenue, Rahway, NJ 07065. Defendant owns and operates www.merck.com and affiliated platforms that offer nationwide access to pharmaceutical products, patient assistance programs, clinical trial information, and educational resources, including to residents of New York.

7.     Plaintiff specifically sought out Merck over other pharmaceutical providers due to its reputation for leading-edge science, patient-centered initiatives, and robust assistance programs. As a legally blind consumer, he relies on accessible digital interfaces and descriptive labeling to make informed decisions about his care. Merck's failure to provide an accessible website denied him equal access to the services it provides to non-disabled customers. Despite its Fortune 1000 status and global reach, Defendant has failed to implement WCAG-compliant features across its digital platforms. This failure to remediate—despite clear federal guidance, prior litigationcourtlistener.com, and ample opportunity—reflects a sustained and knowing disregard for the rights of individuals with disabilities.

8.     Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that its websites become and remain accessible to blind and visually impaired users. Plaintiff is deeply invested in maintaining a care regimen that meets his accessibility, health, and independence needs. He specifically sought out Merck because of its reputation for science-backed support, transparent eligibility tools, and nationwide pharmaceutical access. Plaintiff browsed the websites intending to evaluate program descriptions,

confirm eligibility, and complete an application. However, unless Defendant remedies the numerous access barriers—including unlabeled buttons, inaccessible navigation flows, and broken ARIA references—Plaintiff will continue to be unable to independently navigate, browse, use, and complete a transaction. Defendant is denying blind and visually impaired persons throughout the United States equal access to the goods and services it provides to non-disabled customers. Defendant's denial of full and equal access—and therefore denial of its services—is a violation of Plaintiff's rights under the ADA.

9.      Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that its website becomes and remains accessible to blind and visually impaired users.

## JURISDICTION AND VENUE

10.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.   The claims also arise under the Rehabilitation Act of 1973, 42 U.S.C. Section 794.

11.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, including those under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") and § 296 et seq.; and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

12.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because

Defendant conducts substantial and continuous business in this District through its interactive websites, including www.merck.com, MerckHelps, and the Merck Access Program. Plaintiff has repeatedly accessed and attempted to use these websites from his residence in Bronx, New York, which falls within this Court's jurisdiction. A significant portion of the discriminatory conduct giving rise to this action occurred within the Southern District of New York ("SDNY").

13.    Defendant Merck & Co., Inc. is registered to do business in New York State and has been conducting business in New York State, including in this District. Defendant participates in New York's economic life by clearly performing business over the Internet. Through its interactive websites, Defendant entered into transactions and provided services to residents of New York, including pharmaceutical support, patient assistance, and educational resources. These online interactions involve, and require, Defendant's knowing and repeated transmission of computer files over the Internet. See Reed v. 1-800-Flowers.com, Inc., 327 F. Supp. 3d 539 (E.D.N.Y. 2018); Andrews v. Blick Art Materials, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 592 U.S. ___ (2021); South Dakota v. Wayfair, Inc., 585 U.S. ___ (2018); Godfried v. Ford Motor Co., 2021 U.S. Dist. LEXIS 87012 (D. Me. May 6, 2021); Romero v. 88 Acres Foods, Inc., 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); Sanchez v. NutCo, Inc., 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022); Panarra v. HTC Corp., No. 6:20-cv-6991 (W.D.N.Y. Apr. 15, 2022)

14.    Thus, jurisdiction and venue are appropriate in this District because Plaintiff resides here, and courts have consistently held that website accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over out-of-state operators.

## THE PARTIES

15.     Plaintiff, ANTHONY BENSON, is and was at all relevant times a resident of Bronx County, New York.

16.     Plaintiff is legally blind and visually impaired, qualifying as an individual with a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the New York City Human Rights Law ("NYCHRL"). He underwent bilateral enucleation following traumatic ocular injuries and has no remaining visual function. As confirmed by Dr. Jeffrey G. Odel, MD, of Columbia University Irving Medical Center, Plaintiff is unable to read printed materials and relies exclusively on screen-reading software, including NonVisual Desktop Access ("NVDA"), to access digital content. He has been referred for assistive technology evaluation and orientation and mobility training to support his independence and quality of life.

17.     Upon information and belief, Defendant Merck & Co., Inc. is a New Jersey corporation with its principal business address at 126 East Lincoln Avenue, Rahway, NJ 07065. Defendant owns and operates the websites www.merck.com, MerckHelps, and the Merck Access Program, which offer consumers nationwide access to pharmaceutical products, patient assistance programs, clinical trial information, and educational resources, including to residents of New York.

18.     Defendant's websites function as commercial places of public accommodation subject to Title III of the ADA and the NYCHRL. At all relevant times, Defendant has maintained control over the design, coding, and digital infrastructure of its websites and is responsible for ensuring their compliance with applicable accessibility standards, including the Web Content

6

Accessibility Guidelines ("WCAG") 2.1 Level AA. Although the websites include superficial references to accessibility, they lack meaningful ARIA labeling, semantic structure, and keyboard operability across key interactive features. These deficiencies render the websites inaccessible to blind users and place Defendant on constructive notice of noncompliance.

## NATURE OF ACTION

19.     This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

20.      The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

21.     In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services

7

offered online.

22.     Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

23.     Plaintiff, ANTHONY BENSON is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

24.     For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

> See also American Federation for the Blind, *Screen Readers*, AFB Technology Guide (last accessed June 12, 2025), estimating that 26 million American adults report sight deficiency.

8

25.     The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

26.     Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements

b. Unlabeled frames and navigation regions

c. Scripts without accessible alternatives

d. Inaccessible forms and input fields

e. Content conveyed solely through visual presentation

f. Inability to resize text without loss of functionality

g. Time limits that cannot be adjusted or disabled

h. Missing or ambiguous page titles

i. Links lacking descriptive context

j. Keyboard focus indicators that are not discernible

k. Undetectable default language settings

l. Components that trigger unexpected context changes

m. Settings that alter context without user notice

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts

o. Improperly nested markup, duplicate attributes, and non-unique IDs

p. Inaccessible Portable Document Format (PDF) files

q. User interface elements whose roles and states cannot be programmatically determined items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## STATEMENT OF FACTS

27.    Plaintiff ANTHONY BENSON is a legally blind consumer residing in Bronx County, New York. He relies exclusively on screen-reading software, including NonVisual Desktop Access ("NVDA"), to access digital content and conduct online transactions. Plaintiff receives ongoing care from Columbia University Irving Medical Center and has been referred for assistive technology evaluation and orientation and mobility training to support his independence and quality of life.

28.    On September 5 and September 6, 2025, Plaintiff attempted to access Defendant's consumer-facing websites, including www.merck.com, MerckHelps, and the Merck Access Program, to evaluate eligibility for pharmaceutical assistance and download application materials for BELSOMRA® (suvorexant), a prescription sleep aid manufactured by Merck and prescribed to Plaintiff following his vision loss. These platforms are promoted by Merck & Co., Inc. as exclusive gateways to free medicines and adult vaccines for qualified patients.

29.    Plaintiff encountered persistent access barriers that rendered the websites incompatible with NVDA. Specifically:

- The "Apply Now" and "Check Eligibility" buttons lacked ARIA labels and failed to announce their function or state.

- Core navigation menus used broken skip links and empty headings, disrupting keyboard focus.

- Key images lacked descriptive alt text, and contrast failures made form fields unreadable.

- NVDA was unable to parse downloadable PDFs due to inaccessible markup.

30.     On the same day, Plaintiff's counsel conducted a forensic audit of www.merck.com using the WAVE Web Accessibility Evaluation Tool. The scan confirmed violations of WCAG 2.1 Level A and AA standards, including:

- 14 missing alternative text elements

- 22 empty headings

- 11 broken skip link

- 1 empty button

- 1 empty link

- 12 redundant links

- 5 redundant title text

- ARIA inconsistencies and noscript elements

31.     These barriers were not theoretical—they appeared on the exact pages Plaintiff attempted to access and rendered the site incompatible with NVDA screen-reading software. Plaintiff's exclusion was real, repeatable, and corroborated by forensic evidence.

11

32.    Plaintiff remains highly motivated to return to Merck's websites once they are made accessible. His interest is concrete and ongoing, rooted in his need for medication support and digital autonomy. Merck's pharmaceutical assistance programs are not reliably available through third-party platforms or offline channels. Without remediation, blind and visually impaired consumers are categorically excluded from receiving these services.

## CLASS ACTION ALLEGATIONS

33.    Plaintiff Anthony Benson brings this action on behalf of himself and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access the website and were denied equal access to its services, offerings, and support due to persistent digital accessibility barriers during the relevant statutory period.

34.    Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals residing in the City and State of New York who have attempted to access the website and were similarly denied equal access to its offerings due to the same systemic barriers.

35.    Common questions of law and fact exist among the Class, including:

- Whether the website qualifies as a "public accommodation" under Title III of the ADA;

- Whether Defendant's Website constitutes a "place or provider of public accommodation" under the NYCHRL;

- Whether the website's persistent accessibility barriers violate the ADA by denying

12

blind users full and equal access to Ancestry's products, services, and support;

- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace.

36.    Plaintiff's claims are typical of the Class. Like other blind individuals, she relies on screen-reading software and keyboard navigation to access online platforms. He encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

37.    Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

38.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

39.    Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

40.    Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use www.ancestry.comand faced exclusion.

## FIRST CAUSE OF ACTION
### (Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)

41.    Plaintiff, ANTHONY BENSON, on behalf of himself and the Class Members,

repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

42.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in the full and
equal enjoyment of the goods, services, facilities, privileges, advantages, or
accommodations of any place of public accommodation by any person who owns,
leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

43.    Defendant's Website that is offered as a link to the company is a service that is

offered to the general public, and as such, must be equally accessible to all potential consumers.

44.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to

deny individuals with disabilities the opportunity to participate in or benefit from the products,

services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. §

12182(b)(1)(A)(i).

45.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also

includes, inter alia:

[A] failure to make reasonable modifications in policies, practices, or procedures,
when such modifications are necessary to afford such goods, services, facilities,
privileges, advantages, or accommodations to individuals with disabilities, unless
the entity can demonstrate that making such modifications would fundamentally
alter the nature of such goods, services, facilities, privileges, advantages or
accommodations; [and] a failure to take such steps as may be necessary to ensure
that no individual with a disability is excluded, denied services, segregated or
otherwise treated differently than other individuals because of the absence of
auxiliary aids and services, unless the entity can demonstrate that taking such steps
would fundamentally alter the nature of the good, service, facility, privilege,
advantage, or accommodation being offered or would result in an undue burden.

14

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

46.     The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

47.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

<u>**SECOND CAUSE OF ACTION**</u>
**(Rehabilitation Act of 1973)**

48.     Plaintiff, ANTHONY BENSON, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

49.     Because of his aforementioned disabilities, Plaintiff; is a qualified individual as that term is defined  under Section 504 of the Rehabilitation Act of 1973.

50.     Because Defendant receives considerable funding under Medicare, Medicaid and other government programs, Section 504 of the Rehabilitation Act of 1973 applies to the

Defendant.

51.     For the reasons stated with regard to Title III of the ADA, Defendant's website is also discriminatory under Section 504 of the Rehabilitation Act of 1973.

52.     Because Defendant is a healthcare provider and should be aware of its website's deficiencies, it has acted with deliberate indifference towards the Plaintiff and members of his Class and Plaintiff is entitled to compensatory damages as well as injunctive relief.

### THIRD CAUSE OF ACTION
**(New York Stare Human Rights Law)**
**("NYSHRL")**

53.     Plaintiff ANTHONY BENSON, on behalf of himself and the Class of New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

54.     At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

55.     Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

56.     Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

57.     Plaintiff has visited the Website on a number of occasions and has encountered

barriers to his access that exist.

58.    Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

59.    Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

60.    Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities.  This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device.  Article 15 of N.Y. Exec. Law § 296(2)(c).

61.    The Defendant's discriminatory practice also includes, "a refusal to take such steps

17

as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

62.    Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

63.    Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

64.    Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

65.    Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

## FOURTH CAUSE OF ACTION
### (Violation of New York State Civil Rights Law) ("NYCRL")

66.    Plaintiff, ANTHONY BENSON, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

67.    Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

68.    Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

69.    No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

70.    § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

71.    Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as

19

Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

72.    Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

73.    Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

74.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

75.    Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

## FIFTH CAUSE OF ACTION
### (Violations of the New York City Human Rights Law)
### ("NYCHRL")

76.    Plaintiff, ANTHONY BENSON, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

77.    N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee,

proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

78.    Defendant is subject to NYCHRL because it owns and operates the Website making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

79.    Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

80.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

81.    Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

      a.    constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

21

  b.  constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

  c.  failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

82. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

83. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

84. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

85. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

86. Plaintiff is also entitled to reasonable attorneys' fees and costs.

87. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## SIXTH CAUSE OF ACTION
### (Declaratory Relief)

88.     Plaintiff, ANTHONY BENSON, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

89.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

90.     A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a.     A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., the Rehabilitation Act of 1973, 29 U.S.C. Section 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.     A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.     A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., the Rehabilitation Act of 1973, 29

U.S.C. Section 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.      An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.      Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f.      Pre-judgment and post-judgment interest;

g.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
      October 16, 2025

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com

24